JUN 22 2026 AM9:18
FILED - USDC - FLMD - TPA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

MARKETA MATHIS

                    Plaintiff,

v.

ALAIN LOPEZ,
AML SERVICES CORP., a Florida
corporation,

                  Defendants,

C.A No. 8:26-CV-1797-KKM-CPT

**JURY DEMAND**

## COMPLAINT

Plaintiff Marketa Mathis, proceeding pro se, sues Defendants Alain Lopez, individually, and AML Services Corp., a Florida corporation, and alleges:

### I.   JURISDICTION AND VENUE

1. This is a civil action arising under the laws of the United States and the State of Florida. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) because Count I arises under the Fair Housing Act, 42 U.S.C. § 3617. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the state-law claims in Counts II and III because those claims arise from the same case or controversy as the federal claim.

2. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Hillsborough County,

1

substantial part of the events giving rise to the claims occurred in Hillsborough County, Florida, and under M.D. Fla. Local Rule 1.04 in the Tampa Division because the property at issue is located in Hillsborough County.

3.    This Court has personal jurisdiction over Defendants. Defendant Alain Lopez is an individual residing in Florida who owns and operates the property at issue and directed conduct giving rise to the claims within Florida. Defendant AML Services Corp. is a Florida corporation with its principal place of business in Florida and conducts business in Hillsborough County, Florida.

## II.    PARTIES

4.    Plaintiff Marketa Mathis is an adult resident of Florida and a co-tenant under the lease at issue in this action. At all times relevant to this Complaint, Plaintiff has been the spouse of DiWann Mathis and the mother of the household's two minor children. Plaintiff is a member of the familial-status protected class under 42 U.S.C. § 3602(k).

5.    Defendant Alain Lopez is an adult resident of Florida and the owner of the residential property located at 4015 Pine Street, Seffner, Florida 33584 (the "Property"). At all times relevant to this Complaint, Lopez has acted in his individual capacity as landlord, owner, and as the sole principal of Defendant AML Services Corp.

6.    Defendant AML Services Corp. ("AML") is a Florida corporation with Defendant Lopez as its sole principal. At all times relevant to this Complaint, AML has acted as the property management entity for the Property. AML received rental payments, issued notices, initiated eviction proceedings, and otherwise managed the

2

landlord-tenant relationship with Plaintiff's household.

7.    Lopez and AML are jointly referred to herein as "Defendants." Defendants' conduct, as alleged below, was joint, coordinated, and directed by Defendant Lopez in his capacity as both individual landlord and corporate principal of Defendant AML.

## III.    FACTUAL ALLEGATIONS

### A.    *The Lease, the Household, and Plaintiff's Status as Co-Tenant and Member of the Familial-Status Protected Class.*

8.    On or about April 17, 2025, Plaintiff and her spouse DiWann Mathis entered into a written residential lease with Defendants for the Property located at 4015 Pine Street, Seffner, Florida 33584 (the "Lease").

9.    Plaintiff is identified as a co-lessee on the Lease and has, at all times relevant to this Complaint, been a co-tenant of the Property with full statutory and contractual rights of tenancy.

10.    The household at the Property consists of Plaintiff, her spouse DiWann Mathis, and the household's two minor children, who at the time of the conduct alleged were sixteen and fifteen years of age. The household constitutes a family with "familial status" as defined by 42 U.S.C. § 3602(k).

11.    One of the minor children has documented medical vulnerabilities, including a traumatic brain injury sustained in a 2018 motor vehicle accident. The household's reliance on stable, safe housing has been particularly significant for this child's continuing care.

3

12. Monthly rent under the Lease was $1,875.00. The Lease contained a grace period during which rent payments would be deemed timely under the Lease's payment terms.

13. Plaintiff and her spouse made a security deposit of $1,875.00 to Defendants at the inception of the tenancy, which Defendants have at all times held subject to the obligations of Florida Statute § 83.49.

**B.  *Defendants' September 1, 2025 Illegal Sewage Dumping and Plaintiff's Household's Habitability Complaints.***

14. On or about September 1, 2025, agents and maintenance personnel acting on behalf of Defendants pumped raw sewage from the Property's sewage system onto the yard of the Property — including the area regularly used by the household's two minor children for outdoor activity.

15. Plaintiff personally observed the sewage on the Property's yard, including in the area used by her children. The sewage was visible on the ground, gave off a foul odor, and posed an evident health hazard to the household, including the minor children.

16. The conduct constituted a violation of Florida health and housing code requirements and of Defendants' statutory obligation under Florida Statute § 83.51 to maintain the Property in a safe and habitable condition.

17. Plaintiff and her spouse, on behalf of the household, documented the sewage incident and submitted written habitability complaints to Defendants requesting remediation. The complaints specifically referenced the household's minor children and

the risk that the contaminated yard posed to their health and safety.

18. The submission of the habitability complaints constituted protected activity under the Fair Housing Act, 42 U.S.C. § 3617, because the complaints addressed conditions affecting the household's right to occupy housing free of conditions that endangered the health and safety of family members, including the minor children, who are members of the familial-status protected class under 42 U.S.C. § 3602(k).

19. The submission of the habitability complaints also constituted the exercise of statutory rights under Florida Statute § 83.51, which obligates Florida landlords to maintain leased residential premises in conformity with applicable building, housing, and health codes.

20. Defendants received the habitability complaints. Defendant Lopez, who managed the Property directly and through AML Services Corp., had actual knowledge of the complaints.

21. Following Plaintiff's household's habitability complaints, Defendants ceased responding to maintenance requests, denied repair requests without inspection or explanation, and discontinued the routine landlord-tenant communications that had characterized the parties' relationship prior to the complaints.

22. On or about September 9, 2025, eight days after the September 1 sewage incident and submission of habitability complaints, Plaintiff's household deposited $1,200.00 toward the September 2025 monthly rent into AML's designated rent collection account.

23. On or about September 19, 2025, Plaintiff's household completed the

5

remaining September 2025 rent of $675.00 by additional deposit into AML's rent account, bringing the September 2025 rent to the full amount of $1,875.00. Both deposits were made within the Lease's grace period.

24.    Defendants received and retained both September 2025 rent payments.

**C.    *Defendants' September 16, 2025 Retaliatory Eviction Filing.***

25.    On September 16, 2025 — fifteen days after the September 1, 2025 sewage incident and Plaintiff's household's submission of habitability complaints, and seven days after the September 9, 2025 partial rent deposit — Defendants, acting through their counsel of record, filed an eviction action against Plaintiff's household in the County Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida (the "Eviction Action").

26.    The Eviction Action was filed by Defendants and pleaded as the sole basis for the eviction the alleged non-payment of September 2025 rent in the amount of $1,875.00 — the same rent that Plaintiff's household had already deposited or was in the process of depositing into Defendants' rent collection account.

27.    The Eviction Action was filed within fifteen days of Plaintiff's household's exercise of fair housing and statutory rights through the documented habitability complaints. The temporal proximity between the protected activity and the eviction filing was a direct and proximate consequence of the protected activity.

28.    On or about October 3, 2025, Plaintiff's spouse personally delivered to Defendants' counsel of record at counsel's law office a copy of Plaintiff's household's verified Answer to the Eviction Action together with documentation of the September 9

and September 19, 2025 bank deposits establishing that the September 2025 rent had been paid in full within the Lease's grace period. Counsel personally reviewed the deposit records at that meeting.

29.     On October 10, 2025, notwithstanding the documented payment of September 2025 rent and Plaintiff's household's filing of a timely Answer, Defendants caused to be filed a Motion for Immediate Court Default in the Eviction Action that misrepresented that rent had not been paid and that included claims for October 2025 rent that had never been pleaded in the underlying eviction complaint.

30.     On October 18, 2025, the state court entered a Default Final Judgment for Possession against Plaintiff's household in the Eviction Action. The Default Final Judgment was entered for the entire September and October 2025 rent amounts, notwithstanding that September 2025 rent had been paid in full and that October 2025 rent had never been pleaded in the eviction complaint.

31.     Defendants' procurement of the Default Final Judgment constituted continuation of the retaliatory framework that began with the eviction filing fifteen days after Plaintiff's household's protected activity.

## D.     Post-Judgment Conduct and the March 6, 2026 Displacement of Plaintiff's Family.

32.     Following the entry of the Default Final Judgment, Plaintiff's spouse initiated appellate proceedings in the Second District Court of Appeal of Florida, Case No. 2D2025-2813, challenging the procedural defects in the Default Final Judgment. The appeal remains pending.

7

33.    Despite the pending appellate proceedings and Defendants' awareness of the documented record of payment, Defendants pursued execution of the writ of possession.

34.    On March 6, 2026, the writ of possession resulting from the Default Final Judgment was executed. Plaintiff, her spouse, the household's two minor children — including the medically vulnerable child — and all of the household's personal belongings were physically removed from the Property and from the residence that had been the household's family home.

35.    Plaintiff and her family have remained continuously displaced from stable housing since March 6, 2026. The household has experienced ongoing disruption including the loss of household possessions, the disruption of the minor children's schooling, and emotional harm to all household members.

36.    The Default Final Judgment for Possession entered on October 18, 2025 — the judgment that was procured through the retaliatory eviction proceedings described above — now appears on Plaintiff's public court record and on tenant screening reports. The documented presence of the eviction judgment on Plaintiff's record has, throughout the period of displacement, materially impaired Plaintiff and her family's ability to secure replacement housing. Plaintiff has contacted numerous prospective landlords and rental property managers; following truthful disclosure of the eviction judgment in response to standard pre-application screening questions, Plaintiff has been declined for rental housing.

37.    The harm to Plaintiff's housing access operates continuously, each day that the Default Final Judgment remains on Plaintiff's record. Each day produces additional

8

and discrete continuing harm.

### E.    Defendants' March 17, 2026 Security Deposit Notice and Continuing Collection Conduct.

38.    On or about March 17, 2026 — eleven days after the displacement of Plaintiff's family — Defendant Lopez, acting individually and on behalf of AML, prepared a notice purporting to address the security deposit and asserting deductions from the security deposit and claims for additional unpaid amounts (the "Security Deposit Notice").

39.    Defendants knew at the time of the Security Deposit Notice that Plaintiff and her family had been displaced from the Property and were no longer present at the Pine Street address. Plaintiff's mailing address at the time of the Security Deposit Notice was, and had been communicated to Defendants as, P.O. Box 147, Seffner, Florida 33583.

40.    Notwithstanding actual knowledge that Plaintiff was no longer present at the Pine Street address and that Plaintiff's current mailing address was P.O. Box 147, Defendants mailed the Security Deposit Notice to 4015 Pine Street, Seffner, Florida — the address from which Defendants had themselves displaced the family eleven days earlier. As a direct and proximate result, the Security Deposit Notice did not reach Plaintiff until on or about April 13, 2026 — twenty-seven days after the date appearing on the Notice and well beyond the statutory window for objection.

41.    The Security Deposit Notice asserts deductions and claims totaling $9,375.00 for unpaid rent for the months of November 2025 through March 2026 — the months following the entry of the Default Final Judgment and the months during which

9

Plaintiff and her family were no longer in possession of the Property because Defendants had themselves evicted them.

42. The Security Deposit Notice does not itemize claims for September 2025 or October 2025 rent — the very months that were the alleged basis of the Eviction Action and the Default Final Judgment. The omission of September 2025 and October 2025 from the Security Deposit Notice's itemization is itself evidence that Defendants knew those months had been paid. Had those months in fact been unpaid, they would have appeared on the itemization of unpaid amounts.

43. The Security Deposit Notice is procedurally defective under Florida Statute § 83.49(3) for multiple reasons including: (a) it was mailed to an address that Defendants knew Plaintiff no longer occupied; (b) it was not received by Plaintiff within the fifteen-day window after vacating the premises required by the statute, as a result of Defendants' deliberate misdirection of the mailing; (c) it asserts as deductions amounts that Defendants knew were not legitimately owed including post-eviction rent for months when Plaintiff was not in possession; and (d) it omits the months that were the predicate of the eviction itself, demonstrating Defendants' knowledge that those months had been paid.

44. Defendants' continuing conduct since the displacement has been calibrated to extract additional payments from Plaintiff and her family through demonstrably defective notices and post-eviction collection efforts, and to deplete the security deposit through claims for amounts Defendants knew were not legitimately owed.

## IV.    CAUSES OF ACTION

## COUNT 1

### VIOLATION OF THE FAIR HOUSING ACT
### 42 U.S.C. § 3617 — RETALIATION AND INTERFERENCE

### (Against Defendants Lopez and AML)

45.    Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 44 as though fully set forth herein.

46.    Section 3617 of the Fair Housing Act provides that it is unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, ... any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.

47.    Plaintiff is a member of the familial-status protected class as defined by 42 U.S.C. § 3602(k). The household of which Plaintiff is a member includes the household's two minor children, and Plaintiff is a parent designated as her family's head of household for relevant purposes including the Lease.

48.    Plaintiff, through her household's documented habitability complaints relating to the September 1, 2025 sewage incident, engaged in protected activity within the meaning of 42 U.S.C. § 3617. The habitability complaints addressed conditions endangering the health and safety of the household — including the minor children, who are members of the familial-status protected class — and were directed at Defendants' compliance with applicable housing and health code requirements.

49.    Defendants knew of Plaintiff's household's protected activity. Defendants knew that Plaintiff is a co-tenant with the household, that the household includes two

11

minor children, and that the habitability complaints had been submitted on behalf of the household including the minor children.

50.    Defendants thereafter interfered with Plaintiff's exercise and enjoyment of her fair housing rights. Defendants' interference included, without limitation: (a) the filing of the Eviction Action on September 16, 2025 fifteen days after the habitability complaints; (b) the procurement of the Default Final Judgment on October 18, 2025 for amounts that had been paid and for a month never pleaded in the eviction complaint; (c) the execution of the writ of possession on March 6, 2026 displacing Plaintiff and the household including the minor children; and (d) the continuing post-eviction collection conduct including the procedurally defective Security Deposit Notice asserting amounts Defendants knew were not legitimately owed.

51.    Defendants' interference was on account of Plaintiff's exercise of her fair housing rights. The temporal proximity between the protected activity and the retaliatory eviction filing — fifteen days — supports the causal connection. The substantive proximity is reinforced by Defendants' cessation of all maintenance communications immediately following the protected activity, by Defendants' pursuit of the eviction notwithstanding documented rent payment, and by the absence of any non-retaliatory motivation that could explain the eviction filing on the documented record.

52.    Defendants' conduct was willful and intentional, undertaken with actual knowledge that the eviction allegations were false, that the rent had been paid in full within the lease grace period, and that the true purpose of the eviction proceeding was retaliation for Plaintiff's household's exercise of fair housing rights.

53.    As a direct and proximate result of Defendants' violation of 42 U.S.C. §

12

3617, Plaintiff has suffered damages including, without limitation: (a) loss of housing security for herself and her family, including the minor children; (b) the physical displacement of her family from their family home; (c) the continuing impairment of her ability to secure replacement housing due to the Default Final Judgment on her record; (d) emotional distress and anxiety; (e) loss of the use and enjoyment of the Property; (f) the dissipation of her security deposit and post-eviction financial harm; and (g) a continuing chilling effect on her exercise of fair housing rights.

54.    Pursuant to 42 U.S.C. § 3613(c), Plaintiff is entitled to compensatory damages, punitive damages, injunctive relief, and mandatory attorney's fees and costs.

## COUNT II

### VIOLATION OF FLORIDA STATUTE § 83.64
### RETALIATORY CONDUCT BY LANDLORD

### (Against Defendants Lopez and AML)

55.    Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 44 as though fully set forth herein.

56.    Florida Statute § 83.64 provides that it is unlawful for a landlord to discriminatorily increase a tenant's rent, decrease services to a tenant, or bring or threaten to bring an action for possession or other civil action, primarily because the landlord is retaliating against the tenant.

57.    Under Florida Statute § 83.64(1), evidence of retaliatory conduct includes, but is not limited to, evidence that the landlord has acted within a reasonable time after the tenant has complained to a governmental agency charged with enforcement of building, housing, or health codes, after the tenant has organized or become a member

13

of a tenants' organization, or after the tenant has complained to the landlord pursuant to § 83.56(1).

58.     Plaintiff is a co-tenant under the Lease for the Property and has standing under § 83.64 to assert retaliatory conduct against her household.

59.     Plaintiff's household engaged in protected activity under § 83.64 by submitting habitability complaints to Defendants regarding the September 1, 2025 sewage incident and the unsafe conditions that the incident produced on the Property — conditions endangering the household including the minor children.

60.     Defendants brought an action for possession against Plaintiff's household within fifteen days of the protected activity. The fifteen-day temporal proximity falls well within the "reasonable time" framework that triggers the inference of retaliatory motivation under § 83.64.

61.     Defendants' articulated motivation for the Eviction Action — alleged non-payment of September 2025 rent — is directly contradicted by the documented record. Plaintiff's household paid $1,200.00 on September 9, 2025 and the remaining $675.00 on September 19, 2025, completing the full $1,875.00 monthly rent within the Lease's grace period and prior to or contemporaneous with the September 16, 2025 eviction filing. Defendants received and retained both payments.

62.     Defendants' own subsequent conduct further demonstrates that the articulated non-payment motivation was pretextual. The Security Deposit Notice dated March 17, 2026 itemized claims for unpaid rent for November 2025 through March 2026 but omitted September 2025 and October 2025 entirely. The omission constitutes Defendants' acknowledgment that September 2025 and October 2025 rent — the

14

months on which the eviction was based — had been paid.

63.    Defendants brought the Eviction Action primarily because Plaintiff's household had complained about housing conditions affecting the health and safety of the family including the minor children. The retaliatory motivation is the only motivation supported by the documented record.

64.    Defendants' violation of § 83.64 caused Plaintiff to suffer damages including, without limitation: (a) the physical displacement of her family from the Property; (b) the loss of the use and enjoyment of the leasehold; (c) the impairment of her ability to secure replacement housing; (d) the loss of the security deposit; (e) emotional distress and anxiety; and (f) other consequential damages.

65.    Plaintiff is entitled to compensatory damages and such other relief as is available under Florida Statute § 83.64.

## COUNT III

### VIOLATION OF FLORIDA STATUTE § 83.49(3)
### WRONGFUL WITHHOLDING OF SECURITY DEPOSIT

### (Against Defendants Lopez and AML)

66.    Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 through 44 as though fully set forth herein.

67.    Florida Statute § 83.49(3) governs the landlord's obligations with respect to security deposits at the conclusion of a tenancy. The statute requires that, when the landlord intends to impose a claim on the security deposit, the landlord give written notice by certified mail to the tenant's last known mailing address within thirty days after vacating, with the notice setting forth the amount and reason for the claim.

15

68.    The statute provides that if the landlord fails to give the notice within the statutory window, the landlord forfeits the right to impose a claim upon the security deposit and must return the deposit to the tenant.

69.    The statute further provides that the tenant may object to the proposed deductions in writing within fifteen days after receipt of the notice. If no objection is made, the landlord may deduct the amount of the claim and remit the balance to the tenant within thirty days. If objection is made, the landlord must remit the entire amount of the deposit within thirty days unless the landlord files an action.

70.    Plaintiff is a co-lessee under the Lease for the Property. Plaintiff has a beneficial interest in the security deposit and has standing under § 83.49 to assert the wrongful withholding of the deposit.

71.    Plaintiff and her spouse, on behalf of the household, paid the $1,875.00 security deposit to Defendants at the inception of the Lease. Defendants held the security deposit subject to the obligations of § 83.49.

72.    Plaintiff and her family vacated the Property on March 6, 2026 as a direct result of the execution of the writ of possession resulting from Defendants' Eviction Action.

73.    Defendants knew, at the time of the displacement and at all times thereafter, that Plaintiff's current mailing address was P.O. Box 147, Seffner, Florida 33583. Plaintiff had previously communicated this address to Defendants and to Defendants' counsel of record in connection with the Eviction Action.

74.    On or about March 17, 2026 — eleven days after the displacement —

16

Defendants prepared a Security Deposit Notice purporting to itemize deductions and claims against Plaintiff's security deposit and to assert additional unpaid amounts owed by Plaintiff.

75.    Notwithstanding actual knowledge that Plaintiff was no longer present at the Pine Street address — Defendants having themselves displaced the family from that address — Defendants mailed the Security Deposit Notice to 4015 Pine Street, Seffner, Florida. The mailing was a deliberate misdirection that ensured the Notice would not reach Plaintiff within the statutory window for objection.

76.    As a direct and proximate result of Defendants' misdirection of the Security Deposit Notice, Plaintiff did not receive the Notice until on or about April 13, 2026 — twenty-seven days after the date appearing on the Notice. The misdirection rendered the Notice statutorily ineffective and procedurally defective.

77.    Independent of the misdirection of the Notice, the substantive content of the Security Deposit Notice is fundamentally defective. The Notice asserts claims for unpaid rent for the months of November 2025 through March 2026 — months during which Plaintiff and her family were no longer in possession of the Property because Defendants had themselves displaced them. A landlord cannot assert claims for rent for periods following the landlord's own eviction of the tenant.

78.    Further, the Security Deposit Notice's omission of September 2025 and October 2025 from the itemization of unpaid amounts — the very months that were the predicate of Defendants' Eviction Action — constitutes Defendants' acknowledgment that those months were in fact paid. The omission directly contradicts the allegations on which the Eviction Action was based.

17

79.     Defendants' conduct in connection with the Security Deposit Notice was willful and intentional, undertaken with actual knowledge that the claims asserted in the Notice were not legitimately owed and that the procedural defects in the Notice would deny Plaintiff the opportunity to object within the statutory window.

80.     By reason of Defendants' procedural and substantive violations of Florida Statute § 83.49(3), Defendants have forfeited any claim to the security deposit and are obligated to return the entire deposit to Plaintiff, together with statutory damages, attorney's fees, and costs as provided by the statute.

81.     As a direct and proximate result of Defendants' violation of § 83.49(3), Plaintiff has suffered damages including the wrongful withholding of the $1,875.00 security deposit, the denial of the statutory right to object to the proposed deductions, and the assertion of false claims for amounts not owed.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Marketa Mathis respectfully requests that this Court enter judgment in her favor and against Defendants Alain Lopez, individually, and AML Services Corp., as follows:

A.     COMPENSATORY DAMAGES in an amount to be determined at trial for all harm suffered as a result of Defendants' violations of Plaintiff's Fair Housing Act rights, Defendants' retaliatory conduct under Florida Statute § 83.64, and Defendants' wrongful withholding of the security deposit;

B.     PUNITIVE DAMAGES on Count I in an amount sufficient to punish Defendants' willful, malicious, and intentional violation of Plaintiff's Fair Housing Act rights and to

18

deter future violations;

C. INJUNCTIVE RELIEF enjoining Defendants from further retaliatory or abusive use of legal process against Plaintiff arising from Plaintiff's exercise of fair housing rights, and enjoining Defendants from further discriminatory housing practices targeting Plaintiff's familial-status protected class;

D. MANDATORY FEES AND COSTS pursuant to 42 U.S.C. § 3613(c) for Defendants' violation of the Fair Housing Act;

E. RETURN OF SECURITY DEPOSIT in the amount of $1,875.00, together with any statutory damages, attorney's fees, and costs available under Florida Statute § 83.49(3);

F. DECLARATORY RELIEF that Defendants' conduct violated 42 U.S.C. § 3617 and Florida Statute §§ 83.64 and 83.49(3); and

G. SUCH OTHER AND FURTHER RELIEF as this Court deems just and proper.

## VI.  JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable under Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

/s/ *Marketa Mathis*

Marketa Mathis
P.O. Box 147
Seffner, Florida 33583
1-609-305-1419
mathisadlitem@gmail.com

Dated: June 19, 2026

19